IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00116-KDB-SCR

| | |
|---|---|
| KEVIN RAY REECE,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS HORNER, MATTHEW DAVID LEACH, JOSHUA HAWKS, LEE B. BOLLINGER, BOB SCHURMEIER AND CHRIS LAWS,<br><br>    Defendants. | <u>ORDER</u> |

**THIS MATTER** is before the Court on Defendants' Motions to Dismiss (Doc. Nos. 13, 17). The Court has carefully considered these motions and the parties' briefs and exhibits in support and in opposition. For the reasons discussed below, the Court will **GRANT** the motions. To the extent the claims are directed against the Defendants in their official capacities, the claims are barred by sovereign immunity pursuant to the Eleventh Amendment. If viewed as claims against individuals, the claims must be dismissed because of prosecutorial immunity, public official immunity, qualified immunity and/or the absence of a plausible claim on which relief can be granted.

    **I.**    **LEGAL STANDARD**

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute, *see* Fed. R. Civ. P. 12(b)(1), and Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins*

1

*Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "[F]ederal courts are courts of limited jurisdiction, constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998) (quotation omitted); *see Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). There is no presumption that a federal court has subject-matter jurisdiction. *See Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). Where applicable, governmental immunity bars a court from exercising jurisdiction over a complaint's causes of action subject to immunity. *See R.A. v. Iredell-Statesville Sch. Dist. Bd. of Educ.*, No. 520CV00192KDBSCR, 2023 WL 8461186, at *3 (W.D.N.C. Dec. 6, 2023) (citing *Bunch v. Britton*, 802 S.E.2d 462, 468 (N.C. Ct. App. 2017)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient allegations "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the

2

light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see Twombly*, 550 U.S. at 555 (A claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements."). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted). In other words, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

In applying these Rule 12 standards the Court must also consider that Plaintiff filed the operative Amended Complaint *pro se*, even though he has now retained counsel. *Pro se* pleadings are liberally construed and held to a less stringent standard than those drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89 (2007). If the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Estelle v. Gamble*, 429 U.S. 97 (1976), *Hughes v. Rowe*, 449 U.S. 5 (1980). However, a district court may not rewrite a *pro se* complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Also, the requirement of liberal construction of pro se pleadings does not mean that the court can ignore a clear failure in the pleading to allege

3

facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Iqbal*, 556 U.S. at 678.

Finally, when deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)). The Court, for the purposes of a Rule 12(b)(6) motion, takes all factual allegations as true. *See Ashcroft*, 556 U.S. at 678. However, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

## II. FACTS AND PROCEDURAL HISTORY

The genesis of this action is the alleged theft of a valuable diamond ring, an insurance claim related to the "stolen" ring and subsequent resulting law enforcement investigations and criminal charges. Plaintiff Reese, who ultimately produced the ring to investigators and plead guilty to two charges, contends that Defendants – a North Carolina District Attorney, two Assistant District Attorneys and two agents and a Director of the North Carolina State Bureau of Investigation ("SBI") – violated his constitutional rights by allegedly "depriving him of valuable property in violation of the Fourteenth Amendment, chilling his right to free speech in violation of the First Amendment, and seizing him in violation of the Fourth Amendment." The specific allegations follow.

On September 20, 2018, Debra Goldman, Mr. Reese's then girlfriend, reported the theft of a diamond ring (the "Ring") to the Wilkes County Sheriff's Office. Doc. No. 2 (Amended

Complaint "AC") at ¶ 13. Ms. Goldman later filed an insurance claim for the Ring under a policy she held with the United Services Automobile Association ("USAA"). *Id*. at ¶ 16. Mr. Reese alleges that Ms. Goldman was the sole policy holder, and he "had nothing to do with" the USAA insurance policy. *Id*. With respect to the alleged theft, Mr. Reese claims that the Ring was never stolen or missing; rather, Ms. Goldman sold him the ring. *Id*. at ¶¶ 17-21.

In January of 2022, a Wilkes County Sheriff Deputy contacted Reese and informed him he was looking for the Ring. *Id*. at ¶ 24. Plaintiff says that he consented to, and "fully cooperated with" a search of his residence. *Id*. at ¶¶ 24-25. The Ring was not found at that time, even though Mr. Reece alleges that he "placed all of the jewelry in his possession" out for the Deputy to inspect. *Id*. at ¶¶ 26, 28-29. Supposedly unhappy with the Wilkes County Sheriff's investigation, Ms. Goldman is alleged to have told Defendant District Attorney Tom Horner that Mr. Reese had the Ring at his home. *Id*. at ¶ 35. DA Horner in turn contacted the North Carolina State Bureau of Investigation (SBI) to conduct an investigation. *Id*. at ¶¶ 35-36.

SBI Senior Agent Chris Laws, supervised the SBI's investigation. *Id*. at ¶ 37. In late January 2022, SBI Agent Joshua Hawks and other SBI agents obtained a search warrant to search Plaintiff's residence for the Ring, a search to which Mr. Reese consented. *Id*. at ¶¶ 38, 41-44. During the search, Agent Hawks found the Ring in a green origami bag. *Id*. at ¶ 47. Mr. Reese claimed ownership of the Ring and provided documents to the SBI that he asserted supported that claim. *Id*. at ¶¶ 47, 49. Thereafter, according to Mr. Reese, DA Horner told Agent Hawks on April 14, 2022, that the Ring had been given to USAA and that he was declining to prosecute Plaintiff. *Id*. at ¶ 51. However, Plaintiff also alleges that it was not until April 29, 2022 that Agent Hawks

5

delivered the seized ring to USAA Investigator Eric Lewis to determine if it was the Ring on which the insurance claim had been paid. *Id.* at ¶ 54.

On May 5, 2022, Mr. Reese asked a former North Carolina governor to intervene in the Ring controversy. *Id.* at ¶ 55. Plaintiff told the former governor that he believed Ms. Goldman was blackmailing individuals to influence the SBI. *Id.* at ¶ 56. The former governor then called the Director of the SBI, Defendant Bob Schurmeier, to relay Plaintiff's concerns. *Id.* On May 8, 2022, SBI Director Schurmeier called Plaintiff, and Plaintiff expressed his concerns that he was "not being treated fairly," and that Ms. Goldman was "abusing" and "manipulating" the SBI to harm Plaintiff. *Id.* at ¶¶ 59-60.

Mr. Reece ultimately engaged Attorney Bob Laws to assist him in recovering the ring and hired a ghost writer to assist him in writing a book about Mr. Reece's experience with the criminal justice system. *Id.* at ¶¶ 75, 77-78. Mr. Horner allegedly learned of Mr. Reece's intentions to recover the Ring from Mr. Laws, *id.* at ¶¶ 87-89, and of Mr. Reece's intention to write a book when Venus Taylor – the ghost writer – contacted him and after reviewing a contract between Mr. Reece and Ms. Taylor for Ms. Taylor to write the book. *Id.* at ¶¶ 78, 81, 90. Mr. Reese alleges that after learning this information, Mr. Horner threatened to prosecute Mr. Reece if he attempted to recover the Ring or write the book. *Id.* at ¶¶ 89, 92. Also, Mr. Reece claims that he stopped his efforts to recover his property and write the book based on Mr. Horner's threats. *Id.* at ¶¶ 91, 229.

On June 29, 2022, DA Horner emailed Attorney Laws informing him that based on information recently provided by law enforcement, the State could not "rule out the strong potential for criminal charges." *Id.* at ¶ 92. However, if Plaintiff "satisfied USAA, that would factor

6

into his charging decisions." *Id*. at ¶ 93. Also, Plaintiff asserts that DA Horner, ADA Leach, ADA Bollinger, and Agent Hawks communicated with USAA. *Id*. at ¶ 95.

On September 6, 2022, Plaintiff was indicted by a grand jury for felony possession of stolen goods and multiple counts of felony common law obstruction of justice. *Id*. at ¶ 105. Plaintiff believes ADA Leach prepared the indictments and alleges he was arrested by Agent Hawks and processed by the Wilkes County jail before posting bail. *Id*. at ¶¶ 107, 109. Ms. Goldman was later charged with insurance fraud and obstruction of justice. *Id*. at ¶¶ 123-124. On March 29, 2023, Plaintiff entered an *Alford* plea to two counts of felony obstruction of justice. *Id*. at ¶ 127. Plaintiff alleges that ADA Bollinger's factual presentation at the plea hearing "contained numerous factual errors." *Id*. at ¶ 129.

Mr. Reece filed this action in July 2023. In the Amended Complaint he asserts fourteen separate claims for relief, which he has categorized as follows:

1. Claims I and IV accuse the elected District Attorney of abusing his position to deprive Mr. Reece of property and the ability to exercise his right to freedom of speech;

2. Claims II through III and VIII through XII involve claims that overlap with Mr. Reese's ultimate arrest and prosecution. (However, Mr. Reece now concedes that these claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) and should be dismissed (Doc. No. 21 at 6));

3. Claims V through VII relate to efforts by the DA Defendants and Agent Hawks to interfere with Mr. Reece's efforts to recover his property from the insurance company.

4. Claims XIII through XIV allege that agents of the State Bureau of Investigation failed to intervene to prevent other agents and state officials from violating Mr. Reece's constitutional rights during the investigation.

## III. DISCUSSION

As summarized above, the relevant factual allegations involve the investigation and prosecution of alleged criminal conduct. Accordingly, in support of their motions to dismiss, Defendants assert that numerous doctrines of governmental immunity bar Mr. Reese's claims. The Court agrees.

First, to the extent that Mr. Reese brings his claims against any of the Defendants in their official capacities, *see* AC at, e.g., ¶¶ 167, 182, 204, 370 (suing DA Horner in his official capacity), the claims are barred by the Eleventh Amendment under the doctrine of sovereign immunity. This immunity extends to "arms[s] of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977), including state agencies and state officers acting in their official capacity. *See Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003); *Gray v. L.*, 51 F.3d 426, 430 (4th Cir. 1995). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). The DA Defendants and SBI Defendants are all officers of various branches of North Carolina's government, and any claims against them in their official capacities are claims against the State of North Carolina. Therefore, the Eleventh Amendment bars all of Plaintiff's official capacity claims.

Second, to the extent Mr. Reese asserts claims against the DA Defendants and SBI Defendants as individuals, other doctrines of immunity – specifically, prosecutorial immunity,

8

public official immunity and qualified immunity – protect them from most of his claims. "A prosecutor enjoys absolute immunity for prosecutorial functions 'intimately associated with the judicial phase of the criminal process.'" *Dababnah v. Keller-Burnside*, 208 F.3d 467, 470 (4th Cir. 2000) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Nero v. Mosby*, 890 F.3d 106, 117-18 (4th Cir. 2018); *Nivens v. Gilchrist*, 444 F.3d 237, 250 (4th Cir. 2006) (claim against prosecutor in his individual capacity were barred by prosecutorial immunity). Here, Mr. Reese's decision to send the Ring to USAA and otherwise communicate with the insurance company as part of the criminal investigation are plainly well within the ambit of the prosecutors' functions. *See* N.C. Gen. Stat. § 15-11.1 (statute governing the custody and disposition of property seized by law enforcement and giving the district attorney discretion to determine when and how to release evidence); *Springmen v. Williams*, 122 F.3d 211, 212–13 (4th Cir. 1997) (A prosecutor's task of factual investigation required for determining whether to go forward with a prosecution is "squarely cover[ed]" by prosecutorial immunity). Therefore, the DA Defendants are entitled to absolute prosecutorial immunity with respect to Plaintiff's claims related to interference with any of his rights to his property. *See* Claims I, V, and VI.[1]

---

[1] The DA Defendants ask the Court to also extend their prosecutorial immunity to Mr. Reese's First Amendment claims based on the allegation that DA Horner threatened Mr. Reese with prosecution if he wrote a book critical of the criminal justice system in Wilkes County. While the DA Defendants are correct that prosecutorial decisions regarding who and when to prosecute are at the core of the doctrine of prosecutorial immunity, *see Hartman v. Moore*, 547 U.S. 250, 262 (2006), a claim that a DA used the threat of prosecution to chill protected speech unrelated to a potential crime may be outside "the judicial phase of the criminal process," depending on the facts alleged. In any event, the Court need not and does not decide the application of this immunity to the First Amendment claim on these facts because, as discussed below, Mr. Reese has not plausibly alleged a claim for violation of his rights under the First Amendment.

9

Similarly, all Defendants are protected against Plaintiff's state law claim for "Tortious Interference with Contract by Engaging in Separate Communications with USAA" (Claim VII) by public official immunity for tasks taken within the course and scope of their offices. "To maintain a suit against a public official in his/her individual capacity, the plaintiff must make a *prima facie* showing that the official's actions (under color of authority) are sufficient to pierce the cloak of official immunity." *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). "As a general rule it is presumed that a public official in the performance of his official duties 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest.'" *Green v. Town of Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). A public official performing discretionary acts can be liable for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or if the conduct is (2) malicious or (3) corrupt. *Moore v. Evans, supra; Epps v. Duke University, Inc.*, 122 N.C. App. 198, 207, 468 S.E.2d 846, 853, *rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996).

For purposes of public official immunity, an official acts with malice only "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty *and* which he *intends to be prejudicial or injurious to another*." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984) (emphasis added). An act is wanton if it is done with a wicked purpose or with reckless indifference to the rights of others. *Id*. The First Amended Complaint does not describe any alleged conduct of the Defendants that could plausibly constitute malice, that was corrupt (i.e., for his undue personal benefit), or that occurred outside the scope of their duties. Therefore, Plaintiff's Claim VII must be dismissed on grounds of public official immunity.

10

*See Marlowe v. Piner*, 458 S.E.2d 220, 223 (N.C. App. 1995) (granting summary judgment dismissing claims against deputy sheriff in his individual capacity for false imprisonment and false arrest based upon public official immunity where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "*negligently* believed he had probable cause to arrest plaintiffs); *Olvera v. Edmundson*, 151 F. Supp. 2d 700 (W.D.N.C. 2001) (dismissing wrongful death claim against sheriff under Rule 12(b)(6) based upon public official immunity since plaintiff alleged only that the sheriff acted with *deliberate indifference* towards decedent rather than having an *intention* to injure or otherwise prejudice the decedent); *Jetton v. Caldwell County Board of Education*, 2007 WL 3015252 (N.C. App. August 7, 2007) ("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect, or kindness, there is no evidence they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence").

Further, the Defendants are entitled to qualified immunity in their individual capacity with respect to nearly all of Plaintiff's claims.[2] "A government official is entitled to qualified immunity from civil damages for performing discretionary functions when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Taylor v. Waters,* 81 F.3d at 433 (1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity, when found to apply, bars § 1983 suits against government officers in their individual capacity." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. 2009). "Qualified immunity provides 'an immunity from suit rather than a mere defense to liability[.]'"

---

[2] Again, the Court will address Plaintiff's claims based on the alleged violation of the First Amendment under Rule 12(b)(6).

11

*Cloaninger*, 555 F.2d at 330. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id*. Qualified immunity "gives ample room for mistaken judgements" and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271, 278 (1986).

To state an individual capacity suit, Plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. *Kentucky v.Graham*, 473 U.S. 159, 165-66 (1985). After a careful and generous review of the Amended Complaint, the Court finds that Plaintiff has not plausibly alleged any violation of an established constitutional right with respect to Plaintiff's claims related to investigation of potential criminal conduct, communications with USAA and alleged "interference" with any of his purported rights to the Ring. *See* Claims I, V, VI, XIII and XIV. Therefore, all Defendants are entitled to qualified immunity with respect to those claims.

Finally, for all his claims, Plaintiff fails to plausibly state a claim on which relief may be granted. With respect to a claim of First Amendment retaliation, a Plaintiff must allege facts that, if proven, establish "(1) [he] engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendants' conduct." *Snoeyenbos v. Curtis,* 60 F.4th 723, 729–30 (4th Cir. 2023). Further, "[n]ot all retaliatory conduct tends to chill First Amendment activity." To recover for retaliation, a plaintiff "must show that the defendant's conduct resulted in something more than a '*de minimis* inconvenience' to the exercise of First Amendment rights." *Id.* More broadly, the standard for such a claim is whether the resulting actions

12

would likely deter a person of ordinary firmness from the exercise of First Amendment rights. *Id.* (citing *Constantine v. Rectors & Visitors of George Mason University*, 411 F.3d 474 (4th Cir. 2005)); *see also McClure v. Ports*, 914 F.3d 866, 871 (4th Cir. 2019).

With respect to the facts alleged here, Mr. Reese has plausibly alleged that he was engaged in protected First Amendment activity in writing a book critical of the criminal justice system. Also, he has plausibly alleged DA Horner took action that adversely affected his First Amendment rights by threatening him with criminal prosecution unless he stopped writing the book, which he did in response to DA Horner's alleged threats. However, Mr. Reese has failed to plausibly allege "a causal relationship between [his] protected activity and the defendants' conduct."

In order to establish this causal connection, a plaintiff in a retaliation case must show, at the very least, that the defendant was aware of his engaging in protected activity. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). In his Amended Complaint, Plaintiff sets out a timeline of factual allegations he contends allow the Court to infer a violation of the First Amendment:

- On June 1, 2022, Plaintiff hired Venus "Beanie" Taylor to ghostwrite a book about his "experiences with the criminal justice system." AC at ¶ 77.
- "Sometime later," Taylor informed Plaintiff she had emailed DA Horner requesting an interview for a book entitled "Political Primer," to which DA Horner did not respond. AC at ¶ 78.
- "Also in June," Plaintiff gave a packet of documents to Wilkes County Sheriff Chris Shew, which "accidentally" included a copy of his ghostwriting contract with Taylor, which was provided to the district attorney. AC at ¶¶ 79, 81, 84.

13

- On June 29, 2022, DA Horner emailed Plaintiff's attorney Mr. Laws, informing him that "based upon information recently provided by law enforcement, we cannot rule out the strong potential for criminal charges." AC at ¶ 92.
- "[W]ithin the same month as Mr. Reece signing the ghostwriting contract and accidentally furnishing it to DA Horner, as well as Taylor's email, DA Horner changed his stance from declining to file charges to emailing Mr. Laws that there was a strong potential for criminal charges. . . ." AC at ¶ 227.

Therefore, Plaintiff contends Plaintiff alleges the Court "may infer that DA Horner's change of heart did not come from new substantive evidence, but rather a fear that Mr. Reece's constitutionally protected speech would harm his image and a resulting desire to silence Mr. Reece." AC at ¶ 228.

However, the contents of three referenced documents on which his First Amendment claims depend[3] do not support Plaintiff's claim that DA Horner "fear[ed] that [Plaintiff's] constitutionally protected speech would harm his image . . . .," AC at ¶ 228, or establish the required causal connections. First, the ghostwriting contract contains no information about the

---

[3] As noted above, the Court may consider documents referenced in a complaint in ruling on a motion to dismiss. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (court may consider a document that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity); *Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 472, 480 (W.D.N.C. 2009) ("When a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment.").

content of the project, simply referring to the contracted task as "ghostwriting." *See* Doc. No. 23-1. Just as significantly, the email requesting an interview with DA Horner was sent three weeks *after* the June 29 email to Plaintiff's attorney (which was the allegedly "threatening" communication) and mentions nothing about Plaintiff or his project, but instead only references a "basic primer" for "a common audience" about "North Carolina politics." *See* Doc. Nos. 23-2, 23-3. Finally, in any event, the June 29, 2022 email is not fairly characterized by Plaintiff as a clearly "threatening" communication. Rather, it describes the DA's planned future investigation, alerts Plaintiff's counsel to the "strong potential for criminal charges," asks Plaintiff's attorney for documentary evidence to support his client' claim of ownership of the Ring, and states that the DA will consider any information Plaintiff provides in his charging decision. Doc. No. 23-3. Accordingly, Plaintiff fails to plausibly allege that DA Horner ever knew anything about the content of Plaintiff's project with Taylor or had any knowledge of the project prior to communications with Plaintiff's counsel regarding the status of the investigation and the likelihood of criminal charges. Thus, Plaintiff cannot establish any causal connection between his First Amendment conduct and an adverse action against him in retaliation so his First Amendment claims must be dismissed for failure to state a claim.

Also, Plaintiff's remaining "property" claims already discussed above cannot proceed. As noted above, all of Plaintiff's claims related to communications with USAA and interference with his alleged property rights in the Ring are barred by one or more doctrines of governmental immunity. In addition, those claims fail to plausibly state a claim for numerous reasons. *See* Doc. No. 18 at 18-26. Therefore, they are also subject to dismissal under Rule 12(b)(6).

15

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motions to Dismiss (Doc. Nos. 13.17) are **GRANTED;** and

2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: January 27, 2024

Kenneth D. Bell
United States District Judge

16